IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MICHAEL D. SCOTT | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| -vs- | ) |
| | ) Civil Action No. 05-1123 |
| | ) |
| AIRTRAN AIRWAYS, INC., KELLY GUSTAFSON, | ) |
| AMY MORRIS, LORAL BLINDE and CAROL | ) |
| NOLTON, | ) |
| | ) |
| Defendants. | ) |

AMBROSE, Chief District Judge.

# OPINION and ORDER OF COURT

### SYNOPSIS

Pending is Defendants' Motion for Summary Judgment relating to claims of age, race, and gender discrimination, as well as retaliation (Docket No. 22). Plaintiff has filed a Brief in Opposition. (Docket No. 39). Based on my opinion set forth below, said Motion is granted.

### I. BACKGROUND

Plaintiff, Michael D. Scott, is an African-American male who was hired by Defendant, AirTran Airways, Inc. ("AirTran") on November 6, 2003. While employed, Plaintiff had been written up and disciplined for seven attendance violations. The last violation dealt with the swapping of shifts. The discipline for the alleged violation was a ninety day suspension of his swapping privileges. Thereafter,

Plaintiff filed a Right of Review. During the investigation into the issues raised in the Right of Review, Loral Bilinde, AirTran's Vice President for Human Resources, found out that Plaintiff had falsified information on his employment application wherein Plaintiff stated that the was furloughed by USAirways and that he voluntarily left his employment with USAirways. Plaintiff was terminated on November 15, 2004. (Docket No. 24, Exhibit I). The stated reason for Plaintiff's termination was the falsification of information on his employment application.

Thereafter, Plaintiff filed suit against AirTran, and individual employees of AirTran: Kelly Gustafson, the station manager for AirTran to the Pittsburgh International Airport; Carol Nolton, a supervisor at the Pittsburgh station; Amy Morris, the manager of employee relations at the time of Plaintiff's employment; and Loral Blinde. Mr. Blinde made the decision to terminate Plaintiff. In his Complaint, Plaintiff asserts claims against AirTran of age discrimination under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §621, *et seq.*, and race and gender discrimination and retaliation under Title VII, 42 U.S.C. §2000e, *et seq.* (Docket No. 1, Count I)  Plaintiff also alleges violation of the Pennsylvania Human Relations Act, 43 P.S. §§951, *et seq.* ("PHRA") against AirTran. (Docket No. 1, Count II). Plaintiff finally alleges that the individual Defendants aided and abetted employment discrimination in violation of the PHRA. (Docket No. 1, Count III).    *See,* Docket No. 39, p. 8.

Pending is a Motion for Summary Judgment filed by Defendants. (Docket No. 22). Plaintiff opposes the same. (Docket No. 39). The issues are now ripe for review.

## II. LEGAL ANALYSIS

### A. Legal Standard of Review

Summary judgment may only be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Rule 56 mandates the entry of summary judgment, after adequate time for discovery and upon motion, against the party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

In considering a motion for summary judgment, this Court must examine the facts in a light most favorable to the party opposing the motion. *International Raw Materials, Ltd. v. Stauffer Chemical Co.*, 898 F.2d 946, 949 (3d Cir. 1990). The burden is on the moving party to demonstrate that the evidence creates no genuine issue of material fact. *Chipollini v. Spencer Gifts, Inc.*, 814 F.2d 893, 896 (3d Cir. 1987). The dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). A fact is material when it might affect the outcome of the suit under the governing law. *Id.* Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing that the evidentiary materials of record, if reduced to admissible evidence, would be

insufficient to carry the non-movant's burden of proof at trial. *Celotex*, 477 U.S. at 322. Once the moving party satisfies its burden, the burden shifts to the nonmoving party, who must go beyond its pleadings, and designate specific facts by the use of affidavits, depositions, admissions, or answers to interrogatories showing that there is a genuine issue for trial. *Id*. at 324. Summary judgment must therefore be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *White v. Westinghouse Electric Co.*, 862 F.2d 56, 59 (3d Cir. 1988), *quoting, Celotex*, 477 U.S. at 322.

### B. **Plaintiff's ADEA Claims**

In Count I of the Complaint, Plaintiff seeks relief for age discrimination pursuant to the ADEA. *See,* Complaint, Count I. Plaintiff does not attempt to present any evidence of age discrimination pursuant to the ADEA (*i.e.* that persons under the age of 40 were treated differently than he was treated). In fact, for all intents and purposes, Plaintiff concedes this point. *See,* Brief in Opposition, Docket No. 39, p. 11. Specifically, Plaintiff states as follows:

> At a minimum the current record allows for varied interpretations concerning whether Scott was treated differently from other employees who were not African-American males. Therefore factual disputes about whether white employees or female employees were disciplined more leniently or not at all, and ultimately whether Scott was discharged for an infraction for which similarly situated white or female employees were not is clearly a question for the jury.

*Id.* At no point does Plaintiff discuss his age or present any evidence of age

discrimination. *See,* Docket Nos. 38-39. Consequently, I find that Plaintiff has failed to come forward with evidence to meet the *prima facie* test under the ADEA. Therefore, summary judgment as to Plaintiff's ADEA claim is granted in favor of Defendants.

## C. Plaintiff's Discrimination Claims Pursuant to Title VII and the PHRA[1]

In Count I of the Complaint, Plaintiff also seeks relief for race, and gender discrimination pursuant to Title VII and the PHRA. *See,* Complaint. Plaintiff complains that AirTran discriminated against him because he is an African-American male. There are two avenues for proving Plaintiff's Title VII and PHRA claims: (1) direct evidence under a "mixed motives" theory of liability, *Price Waterhouse v. Hopkins,* 490 U.S. 228 (1989), or (2) circumstantial evidence of discrimination under a burden shifting theory of liability. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973). No party points to any direct evidence; therefore, I will assume for the purposes of this Motion, that there is no direct evidence of discrimination. As such, I will analyze this case only under the *McDonnell Douglas* burden shifting theory of liability.

To establish a *prima facie* case of gender/race/age discrimination, a plaintiff must prove: (1) that he is a member of a protected class, (2) that he suffered an

---

[1]It is well established in the Third Circuit that discrimination claims brought pursuant to Title VII, the ADEA, and the PHRA are all analyzed similarly under the *McDonnell Douglas* "shifting burden" paradigm. *Gomez v. Allegheny Health Services, Inc.,* 71 F.3d 1079, 1084 (3d Cir. 1995), *cert. denied,* 518 U.S. 1005 (1996) (the PHRA and Title VII are "construed consistently");*Newman v. GHS Osteopathic, Inc., Parkview Hosp. Div.*, 60 F.3d 153, 157 (3d Cir.1995); *see, Kelly v. Drexel University,* 94 F.3d 102, 105 (3d Cir.1996); *Kocian v. Getty Refining & Marketing Co.,* 707 F.2d 748, 752 n. 3 (3d Cir.1983) (Title VII and the ADEA are construed similarly); *Walton v. Mental Health Ass'n of Southeastern Pennsylvania,* 168 F.3d 661, 666 (3d Cir.1999). Therefore, my analysis above, although expressed in general discrimination terms, applies equally to Plaintiff's claims of discrimination pursuant to Title VII, the ADEA, and the PHRA.

adverse employment action, and (3) the circumstances of the adverse employment action give rise to an inference of gender/race discrimination (e.g. that similarly situated nonmembers of the protected class were treated differently). *McDonnell Douglas,* 411 U.S. at 802; *Goosby v. Johnson & Johnson Medical, Inc.*, 228 F.3d 313, 318-19 (3d Cir. 2000); *O'Connor v. Consolidated Coin Caterers Corp.,* 517 U.S. 308, 312-13 (1996); *Pivirotto v. Innovative Systems, Inc.,* 191 F.3d 344, 353-56 (3d Cir. 1999). "The central focus ...is always whether the employer is treating some people less favorably than others because of their" protected class. *Pivirotto,* 191 F.3d at 352, *quoting Furnco Constr. Corp. v. Waters,* 438 U.S. 567 (1978). If the plaintiff is successful in establishing a *prima facie* case, the burden of production shifts to the defendant to articulate a legitimate, nondiscriminatory reason for terminating her. If the defendant meets this minimal burden, then the plaintiff must prove, by a preponderance of the evidence, that the articulated reason was a mere pretext for discrimination. *Pivirotto,* 191 F.3d at 352 n.4; *Goosby,* 228 F.3d at 319.

To begin with, Defendants do not challenge Plaintiff's proof regarding the first two elements of the *prima facie* case. *See,* Docket No. 24. Therefore, I will assume, without deciding, that Plaintiff has established said elements. With regard to the third element of the *prima facie* case, however, Defendants contend that there is no evidence to establish that Plaintiff was discriminated against. Specifically, Defendants contend that Plaintiff has not demonstrated that similarly situated individuals were treated differently from him. *See,* Brief in Support, pp. 7-11.

The discrimination claims at issue here revolve around Plaintiff's attendance. AirTran's attendance policy states, in pertinent part, as follows:

> Any seven-(7) occurrences of absence during the twelve-(12) month period may result in termination. Each incidence of absence will be counted as a single occurrence (*i.e.,* an absence of three (3) consecutive days up to 10 days due to illness will be counted as a single occurrence) excluding specific Family Medical Leave Act regulations. An absence of two (2) days without notification to the supervisor will indicate job abandonment and will be deemed voluntary resignation.

(Docket No. 24, Ex. A, p. 43). On what would have been Plaintiff's seventh occurrence, Gustafson did not terminate Plaintiff, as AirTran's policy provides above. *Id.* Rather, the occurrence resulted from the improper use of work swapping privileges, so she suspended his swapping privileges for ninety (90) days. Defendants argue that there is no evidence Plaintiff was treated less favorably in this regard.

In opposition, Plaintiff argues that "Defendants focus upon the suspension of Scott's swapping privileges in September 2004, in making this argument but ignore the other evidence that Scott was subjected to a more rigorous disciplinary regimen." (Docket No. 39, p. 10). Plaintiff, however, does not go on to discuss, let alone point me to evidence of the "more rigorous disciplinary regimen" that he is talking about. Consequently, I find no merit to this statement.

Plaintiff next states that the "90 day swapping suspension was much greater than the 30 day suspension typically applied to suspensions." (Docket No. 39, p. 10). As support for this proposition, Plaintiff directs me to his Factual Statement. *Id, citing,* Docket No. 38, ¶43. Therein, Plaintiff does not even state that a 30 day

7

suspension is "typical." Instead, he states that a "thirty day suspension could have been given for such a violation." (Docket No. 38, ¶43.). This is just a statement of what he believes the policy is and a sanction that Defendants could have given him. This does not lead to an inference that he was treated differently than others similarly situated.

Moreover, when I review the specific deposition testimony of Nolton and Morris cited to by Plaintiff, I again find that Plaintiff has failed to come forward with any evidence that would lead to an inference that he was treated differently than other similarly situated non-protected class members. For example, there is no evidence of the race of Donna Costanzo, William Napoleoni,[2] and any of the other "many people" discussed by Nolton. (Docket No. 38-4, p. 74). Furthermore, there is no evidence if they were similarly situated, and if they were, what the discipline was, such that I may assess whether Plaintiff was treated differently. *Id.* In fact, Morris testified that there were others whose swapping privileges were suspended for ninety days. (Docket No. 38-5, p. 55-56). Therefore, I find no merit to Plaintiff's statement that a "90 day swapping suspension was much greater than the 30 day suspension typically applied to suspensions."

Plaintiff next states that "Defendants' also ignore Scott's testimony that the type of swap arrangement he had made with Sean Conner was something that had occurred with other employees without incurring a disciplinary violation." (Docket

---

[2]These individuals were pointed out as having been written up for swaps that were not completed properly. (Docket No. 38-4, p. 74).

No. 39, p. 10). Yet, Plaintiff fails to cite me to *any* evidence in the record to substantiate this. Conclusory and unsupported beliefs and statements are insufficient to create a genuine issue of material fact.

Plaintiff next attempts to survive summary judgment by citing to the declaration of Justin Davis. (Docket No. 39, p. 10). Justin Davis is an ex-employee of AirTran. (Docket No. 38-6, ¶1). Mr. Davis states: "I noticed on several occasions that Mike Scott seemed to be treated differently than the other Pittsburgh non-flight crew members when it came to the application of AirTran's procedures, rules and regulations relative to the duties of non-flight crew members. Mike was written-up, reprimanded or disciplined for various rule violations, or what management claimed were rule violations, when others were not cited for the same types of infractions." (Docket No. 38-6). This conclusory declaration is nothing more than Mr. Davis' own speculation. It is so vague that it does not provide me with any specific evidence from which even an inference can be drawn that Plaintiff was treated less favorably than similarly situated non-protected members (white and/or females) of the class. Consequently, Mr. Davis' declaration is of no help to Plaintiff's *prima facie* case.

In fact, I find that Plaintiff has failed to come forward with any evidence that would support his argument that he was treated less favorably than similarly situated non-protected (female and/or white) employees in any situation. Thus, Plaintiff has failed to meet his *prima facie* case. Therefore, summary judgment in favor of Defendants as to Plaintiff's Title VII and PHRA claims for race and gender discrimination is warranted.

**D. Retaliation Claim**

Plaintiff's Complaint also appears to assert a claim for retaliation. *See*, Docket No. 1, Count I. Title VII declares that:

> It shall be unlawful employment practice for an employer to discriminate against any of his employees...because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

42 U.S.C. §2000e-3(a).[3] Plaintiff contends he was fired in retaliation for filing a Right of Review request pursuant to AirTran's policies regarding the suspension of his swapping privileges for 90 days.

There are two avenues for proving a claim for retaliation: (1) direct evidence under a "mixed motives" theory of liability or (2) circumstantial evidence of retaliation under a burden shifting theory of liability. *Woodson v. Scott Paper Co.*, 109 F.3d 913, 920 (3d Cir. 1997), *cert. denied,* 522 U.S. 914 (1997). There is no direct evidence of retaliation. Consequently, I will proceed with a burden shifting analysis under *McDonnell Douglas.*

To survive summary judgment under the burden shifting theory, Plaintiff must first establish a *prima facie* case of retaliation. "All that is required to establish a *prima facie* case of retaliatory discrimination is proof (1) that the plaintiff engaged in a protected activity, (2) that the employer took an adverse action against [him],

---

[3]The elements of PHRA retaliation claim and Title VII retaliation claim are the same. *Woodson v. Scott Paper Co.*, 109 F.3d 913, 920 (3d Cir.1997).

10

and (3) that a causal link exists between the protected activity and the employer's adverse action." *E.E.O.C. v. L.B. Foster Co.,* 123 F.3d 746, 754 (3d Cir. 1997), *cert. denied,* 522 U.S. 1147 (1998), *citing, Kachmar v. Sun-Gard Data Sys. Inc.,* 109 F.3d 173 (3d Cir. 1997); *Woodson,* 109 F.3d at 920.

If Plaintiff satisfies this burden, the burden shifts to Defendants. Defendants must proffer a legitimate, nondiscriminatory reason for firing Plaintiff. *Woodson,* 109 F.3d at 920 n.2; *see also, Krouse v. American Sterilizer Co.,* 126 F.3d 494, 500 (3d Cir. 1997). "The employer's burden at this stage is 'relatively light: it is satisfied if the defendant articulates any legitimate reason for the adverse employment action; the defendant need not prove that the articulated reason actually motivated the action.'" *Krouse,* 126 F.3d at 500-01, *quoting, Woodson,* 109 F.3d at 920. Assuming that Defendants discharge this burden, the burden then shifts back to the employee who must establish that the proffered explanation is mere pretext for discrimination. In other words, "the plaintiff must be able to convince the fact finder both that the employer's proffered explanation was false, and that the retaliation was the real reason for the adverse employment action." *Krouse,* 126 F.3d at 501, *citing Woodson,* 109 F.3d at 920. Accordingly, the employee must produce evidence that the "retaliatory animus played a role in the employer's decision making process and that it had a determinative effect on the outcome of that process." *Krouse,* 126 F.3d at 501, *citing Woodson,* 109 F.3d at 931-35.

With regard to the *prima facie* case, Defendants only argue that Plaintiff cannot establish the third element - a causal connection between the filing of a

Right of Review and his termination. *See,* Docket No. 24, p. 12. The existence of a causal link "must be considered with a careful eye to the specific facts and circumstances encountered." *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 279 n.5 (3d Cir. 2000). Case law has focused on two main factors in finding the causal link necessary for retaliation: timing and evidence of ongoing antagonism. *Farrell,* 206 F.3d at 281; see also *Woodson v. Scott Paper Co.*, 109 F.3d 913, 920-21 (3d Cir.1997). "Temporal proximity" between the protected activity and the alleged retaliatory act may be, in itself, sufficient to support an inference of causation where the temporal relationship is "unusually suggestive" of retaliation. *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 279-81(3d Cir. 2000). When temporal proximity is not sufficiently close to support an inference of causation, "other evidence" must be used to support an inference of causation. *Id.  See also, Lidwell v. University Park Nursing Care Center,*116 F.Supp.2d 571, 582-583 (M.D. Pa. 2000).

The entirety of Plaintiff's response to this argument is three sentences. (Docket No. 39, p. 14). Plaintiff does not even identify the dates at issue. From the record provided, however, I find that the protected activity identified by Plaintiff in his Complaint is the filing of a Right of Review, which, at the latest, occurred on September 19, 2004. *See,* Docket No. 26, Ex. D. Plaintiff's termination occurred on November 25, 2004. Over a two month lag time between the two events is not unusually suggestive of retaliation. *See, Williams v. Philadelphia Housing Authority Police Dept.,* 380 F.3d 751, 760 (3d Cir. 2004), cert. denied, 544 U.S. 961 (2005)(finding that just over two months between the protected activity and plaintiff's

12

termination was not so close as to be unduly suggestive of retaliation); *Thomas v. Town of Hammonton*, 351 F.3d 108, 114 (3d Cir.2003) (indicating that the three weeks between the date of plaintiff's complaint and the termination letter was not so close as to be unduly suggestive). Therefore, more evidence is necessary to establish the causal link.

Plaintiff states that it was not until he filed his Right of Review that AirTran began to look into Plaintiff's employment application. Docket No. 39, p. 14. Based on the record, this is a true statement. Blinde, VP of Human Resources for AirTran, the person to whom Plaintiff wrote his Right of Review, did not know that Plaintiff had previously worked in the airline industry until he received Plaintiff's Right of Review e-mail stating the same. *See,* Docket No. 24-2, Ex. D. It was Plaintiff, himself, who brought up his previous experience. *Id.* Thus, I find Blinde's investigation into his experience in the airline industry (which Blinde could only obtain by viewing Plaintiff's application listing his previous employment) cannot serve as evidence, or even an inference, of a pattern of antagonism. Therefore, there is no genuine issue of material fact with regard to the causal connection between the alleged adverse employment action and the protected activity. Consequently, I find that Plaintiff has failed to establish a *prima facie* case of retaliation. Thus, summary judgment in favor of Defendants on Plaintiff's retaliation claim is warranted.

### E. <u>Aiding and Abetting under the PHRA</u>

Count III of the Complaint is a claim for aiding and abetting unlawful discriminatory practices. (Docket No. 1, Count III). The PHRA prohibits "any person"

from aiding, abetting, inciting, compelling, or coercing or otherwise directly or indirectly attempting to commit an unlawful discriminatory practice. 43 Pa. C.S.A. §955(e). It has been held that "supervisors can be held liable for their own direct acts of discrimination…[because] under agency principles, a supervisory employee…at times shares the intent and purpose of the employer." *Frye v. Robinson Alarm Co.*, 1998 WL 57519, *4 (E.D. Pa. Feb. 11, 1998), *citing, Glickstein v. Neshaminy School District*, 1997 WL 660636, *11-13 (E.D. Pa. October 22, 1997). Plaintiff argues that for the same reasons set forth under his discrimination claims, summary judgment should be denied as to the claims for aiding and abetting the discrimination claim under the PHRA. Since I have found, however, that there is no remaining claim under the ADEA, Title VII, or the PHRA, summary judgment as to Count III is warranted.

*****************************

IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MICHAEL D. SCOTT | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| -vs- | ) |
| | ) Civil Action No. 05-1123 |
| | ) |
| AIRTRAN AIRWAYS, INC., KELLY GUSTAFSON, AMY MORRIS, LORAL BLINDE and CAROL NOLTON, | ) ) ) |
| | ) |
| Defendants. | ) |

AMBROSE, Chief District Judge.

## ORDER OF COURT

**AND NOW,** this **21st** day of September, 2006, after careful consideration of the parties' submissions, it is ORDERED that Defendants' Motion for Summary Judgment (Docket No. 22) is granted. Judgment is entered in favor of Defendants and against Plaintiff. The above-captioned case will be "CLOSED" *forthwith*.

BY THE COURT:

/S/   Donetta W. Ambrose
Donetta W. Ambrose
Chief U.S. District Judge

15